UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

BRUCE MERRICK, et al.                                                    PLAINTIFFS

v.                                                          NO. 3:12-CV-334-CRS

DIAGEO AMERICAS SUPPLY, INC.                                        DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the following motions of the defendant, Diageo

Americas Supply, Inc. ("Diageo"):

(1) Motion to dismiss Plaintiffs' First Amended Class Action Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (DN 18); and

(2) Motion for leave to file supplemental authority (DN 28).

Also before the court is Plaintiffs' motion to strike Diageo's notice of supplemental authority.

(DN 38).  For the reasons set forth herein, Diageo's motion for leave to file supplemental

authority (DN 28) will be granted, and Plaintiffs' motion to strike (DN 38) will be denied.  The

court will also grant in part and deny in part Diageo's motion to dismiss the First Amended Class

Action Complaint (DN 18).

## I.  BACKGROUND

Diageo is a New York corporation that operates a whiskey distillery in Louisville,

Kentucky.  Diageo has aged whiskey in Louisville since 2000, and it contends that whiskey has

been aged continuously in its Louisville facilities since at least 1935.  In 2008, Diageo leased and

converted additional warehouses to be used for aging whiskey.  Plaintiffs[1] are a class of

individuals who allegedly own, lease, or rent real and/or personal property located in the vicinity.

As a natural result of the whiskey aging processes that occur in Diageo's warehouses,

ethanol escapes and is emitted into the atmosphere.  These ethanol emissions are regulated under

the provisions of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq.*, as well as state and

local regulations.[2]  As an ethanol-emitting entity, Diageo is required to comply with the

regulations adopted by the Environmental Protection Agency ("EPA"), the Kentucky

Department for Environmental Protection, and the Louisville Metro Air Pollution Control

District ("LMAPCD").  Diageo contends—and Plaintiffs do not appear to dispute—that its

ethanol emissions are within the limits established by these federal, state, and local regulations.

Diageo has also obtained a Title V Operating Permit, in addition to permits from the LMAPCD,

which authorize its ethanol emissions within the limits prescribed by these federal, state, and

local regulations.

Plaintiffs claim that once this ethanol is emitted from Diageo's facilities, it combines with

condensation on Plaintiffs' real and personal property to "cause an invisible, naturally occurring

fungal spore to 'germinate' (start growing) and become a living organism, visible to the naked

human eye."  According to Plaintiffs, this fungus is *Baudoinia compniacensis*, colloquially

referred to as "whiskey fungus."[3]  Plaintiffs argue that whiskey fungus "creates an unsightly

condition requiring abnormal and costly cleaning and maintenance, early weathering of

surfaces," and "causes unreasonable and substantial annoyance and unreasonable interference

---

[1] Plaintiffs filed this lawsuit as a putative class action, alleging that there are potentially hundreds of residents living near Diageo's facilities that could bring similar claims against Diageo.

[2] Ethanol is categorized as an air pollutant, or "volatile organic compound," under both state and federal regulations.  *See* 40 C.F.R. § 51.100; 401 KAR 50:010(135).

[3] Plaintiffs allege that they were not aware that the black material forming on their property was a fungus—or that it was caused by Diageo's ethanol emissions—until the *Courier-Journal* newspaper published an article describing the fungus in May 2012.

with the use and enjoyment of the property, and, as a result of which, the value . . . of [their] property is reduced."  Plaintiffs contend that whiskey fungus can only be removed through extreme cleaning measures, such as high-pressure washing or application of chlorine bleach, and that this cleaning must be frequently repeated to counteract Diageo's continuous discharge of ethanol.[4]  Plaintiffs have complained to local and state agencies about the proliferation of whiskey fungus on their properties.  In response to these complaints, the LMAPCD issued a Notice of Violation letter to Diageo on September 7, 2012.  In the letter, the LMAPCD stated that between June 2011 and May 2012, it received 27 complaints from residents living near Diageo's warehouses of a "black, sooty substance covering . . . . everything exposed to the outdoors."

On June 15, 2012, Plaintiffs filed a Class Action Complaint on the basis of diversity jurisdiction.  (Compl., DN 1).  Plaintiffs subsequently amended the complaint to include additional factual allegations to support their claims.  (First Am. Compl., DN 15).  In the First Amended Complaint, Plaintiffs seek to recover compensatory and punitive damages from Diageo under the following common law theories: (1) negligence and gross negligence; (2) temporary nuisance and permanent nuisance; and (3) trespass.  Plaintiffs also seek injunctive relief on the theory that Diageo can correct or abate its ethanol emissions by implementing ethanol control technology in its warehouses.  Plaintiffs allege that this technology has been successfully installed and used by brandy makers in California and, because brandy and whiskey aging allegedly involve "substantially similar" processes, the technology could be implemented by Diageo.  For its part, Diageo controverts the feasibility of implementing such emission control

---

[4]  The First Amended Complaint alleges that Diageo's warehouses emit thousands of tons of ethanol per year.  According to Plaintiffs, between six and ten pounds of ethanol evaporate from a 50-gallon oak barrel during the aging process.  Plaintiffs contend that Diageo had a monthly inventory of 426,141 barrels of aging bourbon in its Louisville facilities in 2009, as compared to the 176,000 barrel per month inventory it maintained in 2006.

technologies.  It argues that Plaintiffs have not presented proof that these technologies have been successfully implemented in whiskey distilleries and its effect on Diageo's processes remains unknown.

Diageo has moved to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Mot. to Dismiss, DN 18).  Plaintiffs have asked the court to deny Diageo's motion to dismiss or, in the alternative, convert the motion to one for summary judgment.  Nearly a year after filing this motion, Diageo asked the court for leave to file supplemental authority consisting of two recent cases from the Jefferson and Franklin Circuit Courts.  These state trial court decisions also involved claims brought by property owners against whiskey distilleries for property damage that was allegedly caused by whiskey fungus.  (DNs 28, 31).  In both cases, the Kentucky lower courts addressed the issue of whether the plaintiff property owners' state common law tort claims were preempted by the Clean Air Act.  Plaintiffs subsequently filed a motion to strike Diageo's notice of supplemental authority.  (DN 38).  These motions are now before the court.

## II.  STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claims showing that the pleader is entitled to relief.  The pleading standard in Rule 8(a)(2) does not require detailed factual allegations, but "demands more than an unadorned, the defendant-unlawfully-harmed me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, it is not enough that the complaint contains "facts that are merely consistent with a defendant's liability;" rather, a plaintiff must allege "facts—not legal conclusions or bald assertions—supporting a

-4-

'plausible' claim for relief." *Id.* at 687 (quoting *Twombly*, 550 U.S. at 557)).  A complaint that offers legal conclusions or a recitation of the elements of a cause of action will not meet this pleading standard.  *See id.*  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).  The court must take all of the factual allegations in the complaint as true, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown the pleader is entitled to relief.  *Id.* at 677–78.

As a general rule, a district court may not consider matters outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss without converting the motion into one for summary judgment.  *J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 86–87 (6th Cir. 2007) (unpublished); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  However, "when a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment."  *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (quotation omitted).  If a motion to dismiss is converted to a motion for summary judgment, "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

### III. DISCUSSION

**A.  Diageo's Motion for Leave to File Supplemental Authority**

The court will first address Diageo's motion for leave to file supplemental authority. (DN 28).  In that motion Diageo argues—for the first time in this action—that Plaintiffs' state law claims are preempted by the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq.*, a federal statute that contains various provisions aimed at reducing and limiting emissions, including ethanol emissions.  Diageo asks that the court consider two cases recently decided by the Kentucky trial courts which are centered on facts and claims similar to the claims currently pending before this court.  In these cases, the Jefferson and Franklin Circuit Courts reached differing conclusions regarding whether the CAA preempts state common law tort claims brought by property owners against whiskey distilleries.

Diageo also filed a notice of supplemental authority on December 2, 2013, in which it seeks to introduce an additional order from the Jefferson Circuit Court.  (DN 37).  In response, Plaintiffs filed a motion to strike Diageo's notice of supplemental authority.  (DN 38).  Plaintiffs argue that the court should refuse to consider Diageo's supplemental authority because: (1) Diageo's request for leave is untimely; (2) Kentucky state trial court opinions are not binding on this court; and (3) the Jefferson Circuit Court's order is flawed because it only provides a minimal analysis of preemption.  (DN 38-1, p. 2).

Plaintiffs ask the court to deny Diageo's motion, but a district court generally has the discretion to grant a request to supplement the pleadings.  *See* Fed. R. Civ. P. 15(d); *Schuckman v. Rubenstein*, 164 F.2d 952, 958–59 (6th Cir. 1947).  Although we recognize that Diageo attempts to raise the defense of preemption for the first time in the supplemental pleadings, the court nonetheless finds that Diageo is not time barred because this supplemental argument is, in

fact, a threshold issue in the case.  Moreover, the resolution of this issue will not cause unjust delay.  *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 (6th Cir. 1978).  Because the issue of preemption is determinative, the court will grant Diageo's motion for leave to file supplemental authority and deny Plaintiffs' motion to strike.[5]  Accordingly, the court will now address the initial question of whether state common law tort claims are preempted by the CAA.

### B.  Preemption Analysis

"Federal preemption is an affirmative defense upon which the defendants bear the burden of proof."  *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 912 (6th Cir. 2007) (quoting *Fifth Third Bank v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005)).  The Supreme Court has held that federal common law claims are displaced by the CAA.  *Am. Elec. Power Co., Inc. v. Connecticut*, 131 S. Ct. 2527, 2540 (2011).[6]  Yet neither the Supreme Court nor the Sixth Circuit have specifically addressed whether the CAA would preempt a plaintiff's state common law tort claims.

The Supreme Court has, however, addressed preemption of state common law tort claims under the provisions of the Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq.  Internat'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987) (hereinafter, "*Ouellette*").  In *Ouellette*, Vermont landowners sued a New York paper mill for common law nuisance under Vermont law.[7]  The issue before the Court was whether the Vermont property owners' Vermont common law claims against a source of pollution located in New York were preempted under the provisions of the

---

[5]  Plaintiffs request additional time to brief the issue of preemption.  However, the court finds that this issue has been fully vetted in the parties' briefs on the motions to file supplemental authority.
[6]  In its opinion, the Supreme Court intentionally refrained from deciding whether state nuisance claims were preempted because the parties had not briefed the issue.  *Am. Elec. Power Co.*, 131 S. Ct. at 2540.  The Court did, however, state that "the availability *vel non* of a state lawsuit depends, *inter alia*, on the preemptive effect of the federal Act," and it warned that "[l]egislative displacement of federal common law does not require the same sort of evidence of a clear and manifest congressional purpose demanded for preemption of state law."  *Id.* (citing *Internat'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987)) (emphasis in original).
[7]  The paper mill was located in New York, but discharged effluents into a lake that was bordered by both New York and Vermont.

CWA.  *Id.*  The Court found it necessary to distinguish the law of the state of the source of the pollution (the "source state") from the law of the state affected by the pollution (the "affected state").  *Id.* at 490–91.  The court held that suits arising under the common law of the affected state were preempted by the CWA, but suits arising under the common law of the source state were not preempted because

> [t]he CWA precludes only those suits that may require standards of effluent control that are incompatible with those established by the procedures set forth in the Act.  The saving clause specifically preserves other state actions, and therefore nothing in the Act bars aggrieved individuals from bringing a nuisance claim pursuant to the law of the source State.

*Id.* at 497.

Although it recognized that a source state's "nuisance law may impose separate standards and thus create some tension with the permit system," the Court ultimately determined that the application of the source state's law would "not disturb the balance among federal, source-state, and affected-state interests."  *Id.* at 499.  The Court further found that "the restriction of suits to those brought under source-state nuisance law prevents a source from being subject to an indeterminate number of potential regulations," thus ensuring that an emitting entity need only be concerned with complying with its own state's nuisance laws.  *Id.*

The Sixth Circuit has addressed the issue of preemption with regard to state statutory claims.  *See Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332 (6th Cir. 1989) (hereinafter, "*Her Majesty*").  *Her Majesty* foreshadows how the Sixth Circuit would approach the issue of preemption, but the decision only goes so far with regard to the facts of the case before this court.  *Her Majesty* involved claims brought by several environmental groups against the City of Detroit, relating to the proposed construction of a municipal trash incinerator.  The plaintiffs originally brought the suit in Michigan state court,

alleging that the construction of the incinerator would violate the Michigan Environmental

Protection Act ("MEPA").  *Id.* at 334.  By bringing these claims under the MEPA, the plaintiffs

sought to retroactively challenge the validity of permits that the EPA and the Michigan

Department of Natural Resources had previously issued to the incinerator.  *Id.*  The action was

removed to the United States District Court for the Eastern District of Michigan.  Following

removal, the district dourt denied the plaintiffs' motion to remand on the basis that their state law

claims were preempted by the CAA.  *Id.* at 333–34.  The court also granted the city's motion for

summary judgment and dismissed all claims against it.

On appeal, the Sixth Circuit first addressed the plaintiffs' motion to remand.  The court

noted that the CAA establishes minimum air quality standards and gives states the discretion to

adopt more stringent standards.  *Id.* at 336 (citing the savings clauses contained within the CAA,

42 U.S.C. §§ 7416, 7604).  In reviewing the district court's finding of preemption, the Sixth

Circuit noted that "the plain language of the CAA's savings clause compels the conclusion" that

the CAA did not preclude the plaintiffs' statutory claims.  *Id.* at 343.  The Sixth Circuit

supported this assertion with language from the CAA, which it found to "clearly indicate[ ] that

Congress did not wish to abolish state control."  *Id.*  The court also considered the Supreme

Court's holding in *Ouellette*.  *Id.* ("[T]hat Congress did not seek to preempt actions such as

involved in this appeal is clearly indicated by the Court's holding in [*Ouellette*.]").  Ultimately,

the Sixth Circuit ordered that the action be remanded to the district court.  *Id.* at 344.

Judge Boggs issued a strong dissent in *Her Majesty*, in which he voiced his disapproval

with the effect of the court's holding, primarily as it related to the particular facts of the case.  *Id.*

at 344 (Boggs, J., dissenting).  In particular, Judge Boggs believed it improvident to allow the

plaintiffs to retroactively question the propriety of permits that had been granted to the

incinerator by federal and state agencies several years prior to the initiation of the lawsuit. *Id.*

Judge Boggs did, however, cite approvingly to the panel's conclusion that the language of the

CAA and the Supreme Court's decision in *Ouellette* weigh against a finding of complete

preemption. *Id.* at 344–45 ("Congress's decision to give states a role in the regulation of air

pollution requires that federal courts allow state environmental actions against alleged polluters,

even if those parties who are accused of polluting are in compliance with federal standards.").

     Keeping in mind these principles developed in *Ouellette* and *Her Majesty*, the court will

also consider the conflicting rulings of other courts that have addressed the specific issue that is

before this court. Some courts have held that the CAA does not preempt state common law tort

claims. *See Bell v. Cheswick Generating Station*, 734 F.3d 188, 198 (3d Cir. 2013) ("We see

nothing in the Clean Air Act to indicate that Congress intended to preempt source state common

law tort claims.") (hereinafter, "*Bell*"); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab.

Litig.*, 725 F.3d 65 (2d Cir. 2013); *Cerny v. Marathon Oil Corp.*, 2013 WL 5560483, *8 (W.D.

Tex. Oct. 7, 2013) (applying the Third Circuit's analysis in *Bell*). Other courts have reached the

opposite conclusion and found that state common law tort claims are preempted by the CAA.

*See North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 298 (4th Cir. 2010);

*Comer v. Murphy Oil USA*, 839 F. Supp. 2d 849, 865 (S.D. Miss. 2012), *aff'd on other grounds*,

718 F.3d 460 (5th Cir. 2013); *United States v. EME Homer City Generation L.P.*, 823 F. Supp.

2d 274, 296–97 (W.D. Penn. Oct. 12, 2011).

     The Third Circuit has rendered the most recent opinion on this topic. In *Bell*, a group of

property owners brought a putative class action against a power company in Pennsylvania state

court. The property owners sought to recover compensatory and punitive damages under the

following common law theories: (1) nuisance; (2) negligence and recklessness; (3) trespass; and

(4) strict liability.  734 F.3d at 192.  The property owners alleged that the power company's "operation, maintenance, control, and use of [its plant] releases malodorous substances and particulates into the surrounding neighborhood, causing fly ash and unburned coal combustion byproducts to settle onto the Class members' property as a 'black dust/film . . . or white powder' which requires constant cleaning."  *Id.* (footnote and citation omitted).  The power company removed the case to the United States District Court for the Western District of Pennsylvania on the basis of diversity jurisdiction, and then moved to dismiss the case on the grounds of preemption.  *Id.*  The district court granted the power company's motion to dismiss after determining that the property owners' state law tort claims were preempted by the CAA.  *Id.* at 189.  In coming to this conclusion, the court reasoned "that because [the plant] was subject to comprehensive regulation under the Clean Air Act, it owed no extra duty to the members of the Class under state tort law."  *Id.*

The Third Circuit overturned the district court's decision on appeal and held that the property owners' state law tort claims were not preempted by the CAA.  *Id.* at 190.  The Third Circuit reached this holding after tracing the line of authority that addressed preemption under the CAA.  The Third Circuit found that the Supreme Court's decision in *Ouellette* was controlling, and it used that Court's analysis in reaching its holding.  Though *Ouellette* addressed the issue of preemption in the context of the CWA, the Third Circuit concluded that any variation between the CAA and the CWA was negligible and, thus, it could apply the *Ouellette* Court's analysis in determining the CAA's preemptive effect.  *Id.* at 196–97.  The Third Circuit reasoned that both the CAA and the CWA contain "savings clauses" which provide states and private citizens with the right to sue entities or individuals who are alleged to have violated the provisions of the CAA or CWA.  *See* 33 U.S.C. §§ 1365(e), 1370; 42 U.S.C. §§ 7604(e), 7416.

Similarly, the Sixth Circuit has found that the CAA's savings clauses are virtually identical to the CWA's savings clauses.  *See Her Majesty*, 874 F.2d at 343.

After adopting the *Ouellette* Court's method of differentiating between source state and affected state law, the Third Circuit concluded that the CAA did not preempt the plaintiff property owners' source state common law claims.  *Bell*, 734 F.3d at 197 ("[The CAA] does not preempt state common law claims based on the law of the state where the source of the pollution is located.  Accordingly, the suit here, brought by Pennsylvania residents under Pennsylvania law against a source of pollution located in Pennsylvania, is not preempted.") (footnote omitted).  The Third Circuit recognized that its holding could "undermine the comprehensive regulatory structure established by the Clean Air Act by allowing the jury and the court to set emissions standards" and "open the proverbial floodgates to nuisance claims against sources in full compliance with federal and state environmental standards, creating a patchwork of inconsistent standards across the country that would compromise Congress's carefully constructed cooperative federalism framework."  *Id.*  However, the court concluded that the Supreme Court previously addressed and rejected these same concerns in *Ouellette*.  *Id.*  The court further interpreted *Ouellette* to mean "that the requirements placed on sources of pollution through the 'cooperative federalism' structure of the Clean Water Act serve[ ] as a regulatory floor, not a ceiling."  *Id.* at 197–98 (citing *Ouellette*, 479 U.S. at 497–98).

The Third Circuit concluded its opinion by finding that there is "nothing in the Clean Air Act to indicate that Congress intended to preempt source state common law tort claims.  If Congress intended to eliminate such private causes of action, 'its failure even to hint at' this result would be 'spectacularly odd.'"  *Id.* at 198 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 491 (1996)).

The Fourth Circuit, in contrast, has interpreted *Ouellette* in a different light. *See North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 303 (4th Cir. 2010) (hereinafter, "*Cooper*"). In the Fourth Circuit's view, *Ouellette* supports the conclusion that state law nuisance claims that "have the potential to undermine [the CAA's] regulatory structure" must be preempted. *Id.* (citing *Ouellette*, 479 U.S. at 497) (alterations in original). However, *Cooper* pre-dates the Third Circuit's decision in *Bell*, as well as the recent Supreme Court case, *American Electric Power Co., Inc. v. Connecticut*, 131 S. Ct. 2527 (2011). Moreover, *Cooper* is factually and procedurally distinguishable from the case at bar. In *Cooper*, the state of North Carolina sued the Tennessee Valley Authority ("TVA") in federal court for public nuisance. 615 F.3d at 297. In its complaint, North Carolina alleged that eleven TVA power plants located in Tennessee, Alabama, and Kentucky generated emissions which traversed the borders of those states and were deposited in North Carolina, thereby violating North Carolina's emission regulations and constituting a public nuisance. *Id.* at 296–97. The United States District Court for the Western District of North Carolina agreed with North Carolina and held that the TVA's emissions caused a public nuisance. *Id.* at 296. The district court also granted an injunction which required the TVA to install emissions controls at four of its plants in Alabama and Tennessee. *Id.*

The Fourth Circuit reversed the district court's decision and remanded the case with directions to dismiss the action against the TVA. *Id.* at 312. Regarding the issue of preemption, the Fourth Circuit recognized that the *Ouellette* Court "explicitly refrained from categorically preempting every nuisance action brought under source state law." *Id.* at 303. Yet the Fourth Circuit held that it could state "with assurance that *Ouellette* recognized the considerable potential mischief in those nuisance actions seeking to establish emissions standards different

from federal and state regulatory law and created the strongest cautionary presumption against them." *Id.* The Fourth Circuit opted to exercise this cautionary presumption, and it held that North Carolina's nuisance claim was preempted by the CAA. In reaching its decision, the court expressed concern that "[t]o replace duly promulgated ambient air quality standards with standards whose content must await the uncertain twists and turns of litigation will leave whole states and industries at sea and potentially expose them to a welter of conflicting court orders across the country." *Id.* at 301.

The Fourth Circuit's opinion expressly enumerates the problems that may arise if the CAA is not deemed to preempt state common law tort claims. This court is responsive to those concerns. However, after considering Supreme Court and Sixth Circuit precedent, as well as the decisions of other circuits, we find that the Third Circuit's analysis in *Bell* is the most persuasive. Not only is that case factually similar to the case at bar,[8] but the Third Circuit opinion also interprets and incorporates Supreme Court and Sixth Circuit precedent. Conversely, the Fourth Circuit case addressed a claim brought by a governmental entity, and the court only briefly considered *Ouellette* in reaching its holding. Moreover, *Cooper* involved the application of non-source state laws, whereas the litigation before this court involves Kentucky plaintiffs complaining of alleged pollution in Kentucky, which is allegedly caused by a company located in Kentucky.

Our local courts have also discussed the possibility of CAA preemption in cases involving the same facts as are pending before this court. *See Mills v. Buffalo Trace Distillery, Inc.*, No. 12-CI-00743 (Franklin Cir. Ct., Div. 2, Aug. 27, 2013) (hereinafter "*Buffalo Trace*");

---

[8] Both claims were brought as putative class action suits by private property owners who alleged that neighboring companies emitted substances into the atmosphere. *Bell*, 734 F.3d at 192. The plaintiffs in both actions complained of a black, soot-like substance which settled on their property and required constant cleaning. *Id.* Finally, the courts in both cases were addressing motions to dismiss in which the defendants sought to dismiss the plaintiffs' state law tort claims on preemption grounds.

-14-

*Merrick. v. Brown-Forman Corp.*, No. 12-CI-3382 (Jefferson Cir. Ct., Div. 9, July 30, 2013) (hereinafter "*Brown-Forman*").  Though these state court decisions are merely useful for persuasive purposes, the court will engage in a brief discussion of their holdings.

 *Brown-Forman* involves the same plaintiffs as are named in the action before the court, who brought similar common law tort claims against Brown-Forman Corp. and Heaven Hill Distillers, Inc.  *Brown-Forman*, No. 12-CI-3382, at 2.  As in the present case, the plaintiffs in *Brown-Forman* alleged that the defendant distilleries "have a duty to minimize and prevent the ethanol emissions through the use of ethanol-capture technology . . . ."  *Id.*  The defendants sought to dismiss the action on the grounds of preemption.  *Id.* at 1.

 The Jefferson Circuit Court found that the plaintiff property owners' state law claims were preempted by the CAA, and it granted the defendants' motion to dismiss.  *Id.* at 4.  In reaching this decision, the court only considered authority issued prior to the Third Circuit's decision in *Bell*.  The plaintiffs subsequently filed a motion to reconsider in which they asked the court to reexamine the issue of preemption in light of the Third Circuit's holding in *Bell*.  *See Merrick v. Brown-Forman Corp.*, No. 12-CI-3382 (Jefferson Cir. Ct., Div. 9, Nov. 26, 2013). Although it acknowledged the Third Circuit's analysis and holding, the Jefferson Circuit Court declined to reconsider its prior order and elected to follow the Fourth Circuit's reasoning in *Cooper*.  *Id.*  As did the Fourth Circuit, the Jefferson Circuit Court similarly expressed the concern that if it did not find that the plaintiffs' claims were preempted, its ruling would have "the 'potential to undermine [the] regulatory structure'" established by the CAA, as well as state and local laws.  *Id.* at 2 (citing *Ouellette*, 479 U.S. 481, 497–99 (1987)) (arguing that "states can be expected to take into account their own nuisance laws in setting permit requirements").

In contrast, the Franklin Circuit Court rejected a defendant whiskey distillery's motion to dismiss on preemption grounds.[9] *Buffalo Trace*, No. 12-CI-00743, at 3.  In reaching its holding, the Franklin Circuit Court considered the language of the CAA itself, as well as the most recent case law regarding preemption.  *See id.* at 4–5 (citing *Am. Elec. Power Co., Inc.*, 131 S. Ct. at 2527; *Bell*, 734 F.3d at 188; *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d at 65; *Cooper*, 615 F.3d at 291; *Comer*, 839 F. Supp. 2d at 849).  After considering the language of the CAA, in addition to Sixth Circuit authority and cases from other circuits, the Franklin Circuit Court held that the plaintiffs' state law tort claims were not preempted by the CAA.  *Id.* at 6.  The court noted that "[q]uoting *Ouellette*, the Sixth Circuit in *Her Majesty the Queen* held that the CAA intended to and does preserve 'state causes of action . . . and therefore nothing in the Act bars aggrieved individuals from bringing a nuisance claim pursuant to the laws of the *source* State.'" *Id.* (quoting *Her Majesty*, 874 F.2d at 343) (emphasis in original).

As the Franklin Circuit Court noted in *Buffalo Trace*, the federal circuits—and, indeed, the Kentucky lower courts—have reached differing conclusions regarding the issue of CAA preemption of state common law tort claims.  The Sixth Circuit has only peripherally addressed this issue.  *See Her Majesty*, 874 F.2d at 342 (holding that "*the CAA displaces state law only to the extent that state law is not as strict as emission limitations established in the federal statute*") (emphasis in original).  However, the Sixth Circuit has suggested that the plain language of the CAA's savings clause "clearly indicates that Congress did not wish to abolish state control" over emissions regulations.  *Id.* at 343.  The Sixth Circuit has further determined that the Supreme Court's holding in *Ouellette* indicates that Congress did not seek to preempt statutory claims brought against a polluting entity.  *Id.*  Thus, the Sixth Circuit recognized both that *Ouellette*

---

[9]  The complaint was filed by a putative class of property owners who brought claims against a whiskey distillery for negligence, temporary nuisance, permanent nuisance, and trespass.  *Buffalo Trace*, No. 12-CI-00743, at 2.

applies to claims that implicate the provisions of the CAA, and that the CAA's plain language suggests that Congress did not intend for certain private causes of actions to be preempted.

We find that the analysis as set forth by the Third Circuit, coupled with the Sixth Circuit's analysis in *Her Majesty*, captures the prevailing law for CAA preemption.  In the years since the Supreme Court's ruling in *American Electric Power* that the CAA displaces federal common law claims, courts have increasingly interpreted the CAA's savings clauses to permit individuals to bring state common law tort claims against polluting entities.  This interpretation has been cited with approval by a Kentucky trial court, and it corresponds with longstanding Sixth Circuit precedent.  Moreover, even the dissent in *Her Majesty* recognized that a cause of action for pollution might be available to private litigants.  For these reasons, and the reasons stated above, this court finds that Plaintiffs' state common law tort claims against Diageo are not preempted by the CAA.  We will now consider whether Plaintiffs' state common law tort claims can survive Diageo's motion to dismiss.

### C.  Plaintiffs' State Law Claims

As an initial matter, Diageo has offered materials outside the pleadings concerning its federal and state permits, as well as materials which discuss the feasibility of implementing technologies to control its ethanol emissions.  (Mot. To Dismiss, DN 18, Ex. 3–21).  Plaintiffs argue that the court must, therefore, convert Diageo's motion to a motion for summary judgment.  (DN 24, p. 1–2).  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Here, however, the above-referenced items are not necessary for the resolution of the issues argued in Diageo's motion to dismiss, and the court will exclude them from its

consideration.  Therefore, the court will not treat Diageo's motion to dismiss as one for summary judgment under Rule 56, and Plaintiffs need not be given additional time to respond.  *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (quoting *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984)).

### 1)  Count I: Negligence and Gross Negligence

Plaintiffs attempt to assert claims against Diageo for both negligence and gross negligence.  Under Kentucky law, a negligence action requires proof of the following: "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992) (citing *Ill. Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967)).  In the First Amended Complaint, Plaintiffs allege that Diageo owed them the following duties: (1) "a duty to minimize and prevent the accumulation of whiskey fungus on Plaintiffs' property and the property of others similarly situated caused by Defendant's alcoholic beverage production operations in Kentucky"; and (2) "a duty to minimize and prevent the ethanol emissions from entering on to Plaintiffs' property and the property of others similarly situated."  (First Am. Compl., DN 15, ¶¶ 70–71).  Plaintiffs further allege that Diageo breached a duty owed to Plaintiffs when it was cited for violating Section 1.09 of the LMAPCD's regulations.  (*Id.* at ¶ 79).

Diageo contends that Plaintiffs have failed to plead facts which show that Diageo owed them a duty, or that it breached any such duty.  We agree.  Plaintiffs have not identified the source of Diageo's purported duty to minimize and prevent its ethanol emissions from entering Plaintiffs' property, nor have they identified the source of Diageo's alleged duty to prevent whiskey fungus from accumulating on Plaintiffs' property.  Moreover, Plaintiffs have failed to show how they, as property owners, could maintain a private cause of action based on Diageo's

-18-

alleged violation of a city ordinance or regulation.  Indeed, "Kentucky courts have held that a property owner has no private cause of action to bring suit against another property owner for a violation of an ordinance . . . . because the property owner owes a duty to follow the ordinance to the municipality, not to another party." *Baker v. Warren Cnty. Fiscal Court*, 2007 WL 486738, *2 (W.D. Ky. Feb. 12, 2007); *Schilling v. Schoenle*, 782 S.W.2d 630, 632–33 (Ky. 1990); *Alderman v. Bradley*, 957 S.W.2d 264 (Ky. Ct. App. 1997).  Because Plaintiffs' claim for negligence must fail as a matter of law, so too must their claim for gross negligence.

### 2)   Counts II and III: Temporary and Permanent Nuisance

Diageo also seeks to dismiss Counts II and III of Plaintiffs' First Amended Complaint, which allege nuisance claims.  A nuisance can be either private or public.  *Brockman v. Barton Brands, Ltd.*, 2009 WL 4252914 (W.D. Ky. Nov. 25, 2009) (citing *W.G. Duncan Coal Co. v. Jones*, 254 S.W.2d 720, 723 (Ky. 1953)).  While a private nuisance affects only an individual or limited number of individuals, a public nuisance affects the public at large.  *Id.*  In this instance, Plaintiffs claim that Diageo's emissions—and the consequent accumulation of whiskey fungus—constitute a private nuisance.

Under Kentucky law, a private nuisance can be either temporary or permanent in nature. *Lynn Mining Co. v. Kelly*, 394 S.W.2d 755, 755 (Ky. 1965); *see* KRS § 411.520(2) ("A private nuisance shall be either a permanent nuisance or a temporary nuisance, but shall not be both."). A temporary nuisance arises when "a defendant's use of property causes unreasonable and substantial annoyance to the occupants of the claimant's property or unreasonably interferes with the use and enjoyment of such property, and thereby causes the value of use or the rental value of the claimant's property to be reduced."  KRS § 411.540(2).  A permanent nuisance is similarly defined as arising when "a defendant's use of property causes unreasonable and substantial

annoyance to the occupants of the claimant's property or unreasonably interferes with the use and enjoyment of such property, and thereby causes the fair market value of the claimant's property to be materially reduced." *Id.* at § 411.530(2).

To distinguish between temporary and permanent nuisances, Kentucky courts will consider "whether the cause of the nuisance results from some improper installation or method of operation [of the structure] *which can be remedied at reasonable expense*." *Lynn Mining Co.*, 394 S.W.2d at 759 (emphasis in original). If the nuisance can be remedied at reasonable expense, then it is considered temporary in nature. *Id.* Thus, Kentucky differentiates between temporary and permanent nuisances on the basis of whether the nuisance can be remedied or abated. A nuisance is considered temporary under Kentucky law if it is a continuing nuisance that can be remedied at reasonable expense; if no such remedy is possible, then the nuisance will be classified as permanent. *See, e.g.*, *Huffman v. U.S.*, 82 F.3d 703, 705 (6th Cir. 1996) (citing *Lynn Mining Co.*, 394 S.W.2d at 759).

We will first address Plaintiffs' temporary nuisance claim. Diageo argues that Plaintiffs' allegations of unreasonable conduct must be disregarded as speculative and conclusory. However, we find that the complaint states a claim for temporary nuisance. The complaint alleges that Diageo's operations cause whiskey fungus to accumulate on Plaintiffs' property, and that this fungus unreasonably interferes with Plaintiffs' private use and enjoyment of their property. (DN 15, ¶ 88). The complaint also alleges that the value of use or rental value of Plaintiffs' property has been reduced as a result of Diageo's operations. (*Id.* at ¶ 89). To satisfy the final element of their claim for temporary nuisance, Plaintiffs allege that Diageo's ethanol emissions can be corrected or abated at reasonable expense to Diageo. (*Id.* at ¶¶ 86–87). Although Diageo questions the feasibility of implementing Plaintiffs' proposed ethanol emission

control technologies to abate the nuisance, we find that Plaintiffs have provided adequate factual allegations to state a claim for a temporary nuisance.

Plaintiffs can also proceed with their claim for permanent nuisance, albeit as an alternative theory, although they will eventually have to elect between temporary and permanent nuisance. Diageo argues that this claim should be dismissed because Plaintiffs failed to plead any unreasonableness with regard to Diageo's conduct. In response, Plaintiffs contend that the complaint does, in fact, allege that Diageo's use of its property unreasonably interferes with Plaintiffs' use of their property. The complaint alleges that Diageo's facilities emit ethanol, which combines with condensation on Plaintiffs' property to create a fungus that "appears as a black stain, black dots, and soot" and "is very visible on homes, businesses and vehicles . . . ." (DN 15, ¶ 31). The complaint further alleges that the fungus "can only be removed with extreme cleaning measures," for which Plaintiffs are required to spend "an abnormal amount of time, money, [and] energy . . . ." (*Id.* at ¶¶ 32–34). The extent to which Diageo's conduct in fact intrudes on Plaintiffs' private enjoyment must be evaluated in light of the nature of the intrusion and the means by which Diageo could avoid the intrusion, in whole or in part.

While Plaintiffs have technically complied with the pleading requirements and provided sufficient facts to state a claim for permanent nuisance under *Twombly*, we note that this claim may be time barred under the applicable statute of limitations. The parties have not addressed this issue, so we decline to go further than remark that a claim for permanent nuisance is subject to Kentucky's five-year statute of limitations. *See* KRS § 413.120(7); *Donaway*, 2013 WL 3872228, at *2 (citing *Kentucky West Virginia Gas Co. v. Matney*, 279 S.W.2d 805, 806–07 (Ky. Ct. App. 1955)). The First Amended Complaint itself states that in 2007, whiskey fungus was named and its occurrence was made known in the scientific community. (DN 15, ¶ 26). Further,

emission control technologies were being developed near in time to this scientific discovery.  (*Id.* at ¶¶ 126–27).  We question whether Plaintiffs can rely on the *Courier–Journal* newspaper's 2012 article for a "new discovery" as to causation when, by their own statement, Plaintiffs concede that whiskey fungus had been identified and emission control technology was made available several years prior.

Further, the court notes that a private nuisance can be classified as either temporary or permanent, but a plaintiff can only recover damages under one theory.  *See* KRS § 411.520(2) ("A private nuisance shall be either a permanent nuisance or a temporary nuisance, but shall not be both.").  Moreover, whether a nuisance is temporary or permanent is a question of fact. *Huffman*, 82 F.3d at 705.  Although Plaintiffs will eventually be limited to one theory, at this stage in the proceedings they have alleged sufficient facts to proceed on claims for both temporary and permanent nuisance.

### 3) Count IV: Trespass

Plaintiffs appear to bring claims for both intentional and negligent trespass.  Kentucky courts distinguish between intentional and negligent trespass by requiring actual harm for negligent trespass.  *Mercer v. Rockwell Int'l Corp.*, 24 F. Supp. 2d 735, 740 (W.D. Ky. 1998).  In contrast, "[l]iability is imposed for intentional trespasses when there is an intrusion, even when it is harmless."  *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 620 (Ky. Ct. App. 2003) (citation omitted).

"To support an action for trespass, an object or thing must actually enter the person's property and harm it."  *Dickens v. Oxy Vinyls, LP*, 631 F. Supp. 2d 859, 864–65 (W.D. Ky. 2009).  When bringing a claim for intentional trespass, "[a]ny intended intrusion or encroachment which is not privileged is actionable without regard for the shortness of the period

-22-

of the interference, or the absence of pecuniary harm." *Smith v. Carbide & Chems. Corp.*, 226 S.W.3d 52, 54 (Ky. 2007) (citation omitted).

Diageo cites to *Rudy v. Ellis*, 236 S.W.2d 466, 468 (Ky. 1951) to support its contention that an intentional trespass claim requires that the plaintiff prove the defendant had actual knowledge of wrongdoing.  Diageo argues that Plaintiffs failed to prove that Diageo had actual knowledge of any wrongdoing and, as such, Plaintiffs' allegations must be disregarded as speculative.  As we read *Rudy*, the tort of intentional trespass may, but is not required to be, accompanied by actual knowledge of wrongdoing.  The trespass may also be innocent, in that the trespasser believes he or she has a right to be on the land of another.  The difference is in the damages.  Regardless, only an intentional act is required.  In this respect, *Rudy* does not support the conclusion that actual knowledge of wrongdoing must be affirmatively pled in order to maintain an action for intentional trespass.  *See Hammonds v. Ingram Indus., Inc.*, 716 F.2d 365, 371 (6th Cir. 1983) (interpreting *Rudy* and subsequent Kentucky case law as holding that "a trespass is presumed to be intentional and the defendant bears the burden of proving innocence").  Rather, Kentucky courts distinguish between willful, or knowing, trespass and innocent trespass as a means of determining the amount of damages for which a trespasser may be liable.

Therefore, Plaintiffs can state a claim for intentional trespass if they allege that an object or thing entered on and caused harm to their property.  *Dickens*, 631 F. Supp. 2d at 864–65.  In their First Amended Complaint, Plaintiffs allege that "[a]s a direct and proximate result" of Defendant's conduct in operating its facilities, Defendant emitted ethanol that subsequently entered upon and physically invaded Plaintiffs' property.  (DN 15, ¶ 104).  Plaintiffs further allege that "Defendant's actions were, and continue to be, intentional . . . ." (*Id.* at ¶ 112).  Accepting these factual allegations as true, *Iqbal*, 556 U.S. at 678, the court finds that Plaintiffs

have sufficiently alleged an intentional wrongdoing on Diageo's part and have stated a claim for intentional trespass.

Diageo next argues that Plaintiffs failed to state a claim for negligent trespass because there is no allegation that Diageo owed a duty to Plaintiffs or that Diageo was in breach of such duty.  Under Kentucky law, the tort of negligent trespass requires proof of three basic elements: "(1) the defendant must have breached its duty of due care (negligence); (2) the defendant caused a thing to enter the land of the plaintiff; and (3) the thing's presence causes harm to the land." *Rockwell Int'l Corp.*, 143 S.W.3d at 620.

Plaintiffs, in substance, appear to allege that as a result of its operations, Diageo breached a duty of care to not cause ethanol to physically invade Plaintiffs' property.  They further allege that Diageo did not comply with this duty because it allowed ethanol to enter their property.  This constitutes an allegation of a duty of care and subsequent breach of that duty.  We offer no opinion as to the origin of this duty, or its legal basis, but we note that it is enough to state a claim for negligent trespass.  Therefore, Plaintiffs' claims for negligent and intentional trespass will survive Diageo's motion to dismiss.

### 4)  Count V: Injunctive Relief

Finally, Diageo argues that the court should dismiss Plaintiffs' request for injunctive relief because Plaintiffs failed to plead this remedy with sufficient factual matter so as to make their right to relief plausible, rather than speculative.  The parties also disagree as to the appropriate standard for stating a right to injunctive relief.  Diageo contends that the factors set forth in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)[10] govern Plaintiffs' request

---

[10]  In *eBay Inc.*, the Supreme Court established a four-factor test to determine if a party is entitled to permanent injunctive relief.  *eBay Inc.*, 547 U.S. at 391.  Pursuant to this test, the plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate

for injunctive relief, while Plaintiffs maintain that KRS §§ 77.175 and 77.240[11] provide them with a private right to seek an injunction.

Plaintiffs' First Amended Complaint alleges facts which are sufficient to state a claim under either standard.  (*See* DN 15, ¶¶ 73, 114, 116, 137–41).  Therefore, we find that the complaint adequately pleads a right to injunctive relief.

## IV.  CONCLUSION

For the reasons set forth above, the court will grant Diageo's motion to file supplemental authority (DN 28) and deny Plaintiffs' motion to strike (DN 38).  Diageo's motion to dismiss (DN 18) is granted as to Count I and denied as to Counts II, III, IV, and V.  A separate order will be entered this date in accordance with this Memorandum Opinion.

March 18, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**

---

for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

[11]   Pursuant to these statutory provisions, a private citizen is entitled to enjoin a violation of an LMAPCD regulation or a violation of KRS §§ 77.150 through 77.175.